UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
───────────────────────────────────────X  For Online Publication Only
ANNA Y. GUAN,

               Plaintiff,

    -against-                            **MEMORANDUM AND ORDER**
                                                      16-CV-2180 (JMA) (GRB)

NEW YORK STATE DEPARTMENT OF
ENVIRONMENTAL CONSERVATION,

               Defendant.
                                                **FILED**
───────────────────────────────────────X  **CLERK**

**APPEARANCES:**                            3/20/2019 4:17 pm

Anna Y. Guan                             **U.S. DISTRICT COURT**
90-10 32nd Avenue, Apt. 203            **EASTERN DISTRICT OF NEW YORK**
East Elmhurst, NY 11369                  **LONG ISLAND OFFICE**
    *Pro se Plaintiff*

Susan M. Connolly
N.Y.S. Office of the Attorney General
300 Motor Parkway
Hauppauge, NY 11788
    *Attorney for Defendant*

**AZRACK, United States District Judge:**

On May 2, 2016, *pro se* plaintiff Anna Y. Guan ("Plaintiff") filed a complaint in this Court against her former employer, New York State Department of Environmental Conservation ("NYSDEC" or the "Defendant") alleging violations of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000, the Americans with Disabilities Act ("ADA"), 42 U.S.C §§ 12115–12117, and the Genetic Information Nondiscrimination Act ("GINA") 42 U.S.C. § 2000ff. (ECF No. 1.) Before the Court is Defendant's motion to dismiss the complaint.[1] (ECF

---

[1] Contrary to Plaintiff's assertion in her opposition papers, (ECF No. 19-4, at 5–6), Defendant's motion was timely served. It was sent via overnight mail on June 29, 2018, thus complying with this Court's Scheduling Order dated June 11, 2018. See Fed. R. Civ. P. 5(b)(2)(c).

No. 19.) For the reasons stated below, the Court grants Defendant's motion and dismisses Plaintiff's complaint in its entirety. However, Plaintiff is granted leave to file an amended complaint consistent with this Order within thirty (30) days.

## I. BACKGROUND

Given Plaintiff's *pro se* status, the Court considered the facts alleged by Plaintiff in her complaint, (ECF No. 1), as well as any clarifications outlined in her opposition to the Defendant's motion to dismiss. (ECF No. 19-4.) The Court also considers exhibits which are attached or integral to the complaint. Sira v. Morton, 380 F.3d 57, 67 (2d Cir. 2004).

Plaintiff was employed as an "Environmental Engineer 2" by Defendant beginning at some point prior to 2009. (See ECF No. 1-2, at 2, 6; ECF No. 19-4, at 1.[2]) She alleges that, while employed by NYSDEC: (1) she was given a higher number of jobs, and worse jobs than her male counterparts; and (2) she was not given safety protection equipment when she performed Perchloroethyline ("perc") dry cleaner inspections, whereas one male employee had this equipment. (See ECF No. 1-2, at 2; ECF No. 19-4, at 2–4.) Plaintiff alleges that she became sick and was ultimately placed on Workers' Compensation Leave in March 2012 due to perc exposure. (See ECF No. 1-2, at 2; ECF No. 19-4, at 4.; ECF No. 1-3.) The exhibits annexed to her complaint corroborate that she was placed on twenty-five percent Workers' Compensation Leave on March 22, 2012 due to an occupational injury from October 2, 2009, but do not specify the cause of her injury. (ECF No. 1-2, at 6–7.)

Plaintiff's Workers' Compensation Leave gave her the right to a leave of absence for one cumulative year, during which time her health insurance premium continued at the same rate. (See Id. at 6–7, 26.) Her twelve-month entitlement of Workers' Compensation Leave was March 22,

---

[2] For the avoidance of doubt, the pin-citations refer to the ECF pagination.

2012 through March 22, 2013, at which time she was placed on sick leave without pay, and she had to pay the full share of her health insurance. (Id. at 26.) As the exhibits to her complaint make clear, she was informed that if she did not return to work after one year, her employment could be terminated under Section 71 of the Civil Service Law. (Id. at 6–7; 26.) Plaintiff's application for disability retirement was denied in December 2014 and she was terminated effective December 5, 2014 pursuant to Section 71 of the Civil Service Law. (Id. at 5.)

Plaintiff seems to suggest she was put on Workers' Compensation Leave against her will. (See Id. at 2; see also ECF No. 19-4, at 4.) She also claims that she suffered several adverse actions while on Workers' Compensation Leave. For example, she contends that her vacation and personal credits were eliminated on March 31, 2013 and March 31, 2014. (ECF No. 1-2, at 1.) She also claims that she was not granted the same medical insurance coverage as others. (Id. at 1, 3–4; ECF No. 19-4, at 5.) Further, she alleges that she received an email in May 2014 directing her to change the time code of her leave from workers' compensation to sick leave without pay beginning March 27, 2014 without being permitted to use any leave credits.[3] (ECF No. 1-2, at 1; ECF No. 19-4, at 5.) Finally, she contends that she should not have been terminated on December 5, 2014 because she still had leave credits that she was not permitted to use. (Id.)

Plaintiff claims she filed an EEOC complaint on January 21, 2015 and was subsequently asked for additional information, which she provided in a second complaint. (ECF No. 1-2, at 4; ECF No. 19-4, at 6.) Plaintiff received a "right-to-sue" letter on February 10, 2016, annexed to the complaint. (ECF No. 1-1, at 2.) She then commenced this action on May 2, 2016, within 90-days of receiving the "right-to-sue" letter. (ECF No. 1.)

---

[3] Based on other documentation annexed to Plaintiff's complaint and opposition papers (as well as more clearly laid out in Defendant's brief), it seems more likely that this would have happened in 2013 when Plaintiff's Workers' Compensation Leave expired. However, accepting all the allegations in Plaintiff's complaint as true, as the Court must at this stage, the Court will consider the date identified by the Plaintiff.

3

## II. DISCUSSION

### A. Standard of Review

The Court is mindful that when considering a motion to dismiss a *pro se* complaint, the court must construe the complaint liberally and interpret the complaint "to raise the strongest arguments they suggest." Triestman v. Federal Bureau of Prisons, 470 F.3d 471, 474 (2d Cir. 2006). However, a *pro se* plaintiff must still plead "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007); see also Harris v. Mills, 572 F.3d 66, 72 (2d Cir. 2009). A claim is facially plausible only "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Twombly, 550 U.S. at 556). "[M]ere conclusions of law or unwarranted deductions need not be accepted." Bobrowsky v. Yonkers Courthouse, 777 F. Supp. 2d 692, 703 (S.D.N.Y. 2011) (internal quotation marks and citations omitted). In reviewing a motion to dismiss, the Court must accept the factual allegations set forth in the complaint as true and draw all reasonable inferences in favor of the plaintiff. See Cleveland v. Caplaw Enters., 448 F.3d 518, 521 (2d Cir. 2006). Moreover, "[a]lthough the statute of limitations is ordinarily an affirmative defense that must be raised in the answer, a statute of limitations defense may be decided on a Rule 12(b)(6) motion if the defense appears on the face of the complaint." Ellul v. Congregation of Christian Bros., 774 F.3d 791, 798 n.12 (2d Cir. 2014) (internal citations omitted).

### B. Exhaustion of Administrative Remedies

As a prerequisite to filing suit under Title VII, the ADA, and GINA, a private plaintiff must first exhaust all administrative remedies by filing an EEOC charge. See Chin v. Port Authority of New York & New Jersey, 685 F.3d 135, 146 (2d Cir. 2012) (Title VII); Benjamin v. Brookhaven

4

Science Associates, LLC, 387 F. Supp. 2d 146, 154–55 (E.D.N.Y. 2005) (ADA); Yajaira Bezares C. v. Donna Karan Co. Store LLC, Nos. 13-CV-8560, 13-CV-9123, 2014 WL 2134600, at *5 (S.D.N.Y. May 22, 2014) (GINA). To do so, an "individual[] aggrieved by acts of discrimination [must] file a charge with the EEOC within 180 or, in states like New York that have local administrative mechanisms for pursuing discrimination claims, 300 days 'after the alleged unlawful employment practice occurred.'" Vega v. Hempstead Union Free Sch. Dist., 801 F.3d 72, 78–79 (2d Cir. 2015) (citing 42 U.S.C. § 2000e–5(e)(1)). The individual can then only commence a federal suit if she files a complaint within 90 days of receipt of a "right-to-sue" letter from the EEOC. Cornwell v. Robinson, 23 F.3d 694, 706 (2d Cir. 1994) (citing 42 U.S.C. § 2000e–5(f)(1)).[4]

"[O]nly incidents that took place within the timely [EEOC] filing period are actionable." Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 114 (2002). Accordingly, Plaintiff may only raise claims under Title VII, the ADA, or GINA if they were included in a timely EEOC charge or are "reasonably related" to such a charge. Deravin v. Kerik, 335 F.3d 195, 200 (2d Cir. 2003). Although Plaintiff is "not required to demonstrate at the pleading stage that [her] claims were administratively exhausted," DiPetto v. U.S. Postal Serv., 383 F. App'x 102, 104 (2d Cir. 2010) (summary order), or timely, dismissal of unexhausted or untimely claims is appropriate when such defenses appear on the face of Plaintiff's pleadings.

Here, drawing all reasonable inferences in favor of the Plaintiff, her pleadings indicate that she filed a complaint on or around January 21, 2015.[5] Accordingly, Plaintiff can raise Title VII,

---

[4] The Title VII limitations period also applies to ADA and GINA claims. See 42 U.S.C. §§ 12117(a) (adopting the "powers, remedies, and procedures" of Title VII for claims under the ADA); 2000ff-6 (adopting the "powers, procedures, and remedies" of Title VII for claims under GINA).

[5] The timing of Plaintiff's alleged EEOC complaint is not entirely clear. However, Plaintiff specifically alleges that she filed a complaint regarding discrimination and harassment on January 21, 2015, so the Court accepts this date as true at the pleadings stage. (See ECF No. 1-2, at 4; ECF No. 19-4, at 6.) In support, Plaintiff appends to her complaint

ADA, or GINA claims related to allegedly discriminatory acts that took place after March 27, 2014 (300 days before January 21, 2015). Upon reviewing Plaintiff's complaint, the Court identified a non-exhaustive list of potential timely adverse actions:[6]

- The elimination of Plaintiff's vacation and personal credits on March 31, 2014.;
- The cessation of Plaintiff's dental insurance in April 2014;
- Direction by her boss in May 2014 to change the time code of her leave from workers' compensation to sick leave without pay from March 27, 2014, without being permitted to use her accrued leave days;
- Not being granted the same right to receive medical insurance benefits during the relevant time-period; and
- Her termination as of December 4, 2014, without being permitted to use her accrued leave days.

(See ECF No. 1-2, at 1–3; ECF No. 19-4, at 5.) According to Plaintiff's own timeline, none of the allegations of discrimination that took place prior to March 2014 (such as her claims that she received a higher number of worse jobs and was not given safety equipment, or that she was forced to take Workers' Compensation Leave) can be brought in this Court. Accordingly, any claims related to actions prior to March 2014 are dismissed.[7]

Plaintiff has not provided copies of her first complaint dated January 21, 2015, or the EEOC

---

a response from the NYS Department of Labor dated April 6, 2015 in which they request further information regarding her complaint dated January 21, 2015. (See ECF No. 1-2, at 31.) However, in her opposition papers, Plaintiff includes another document regarding EEOC Inquiry No. 520-2015-01465N (matching the number in her right-to-sue letter), in which the EEOC requests that Plaintiff fill out the EEOC Charge Questionnaire within 30 days to file an EEOC charge, and states "no charge has been filed." (See ECF No. 19-4, at 13–14.) It is unclear if the hand-written date on this document is 3/5/15, or 5/5/15. Plaintiff also annexes a document she describes as second complaint to the EEOC, dated June 5, 2015. (See Id., at 6, 16–18.)

[6] By identifying these actions, the Court does not find that they necessarily qualify as "adverse actions" under the relevant statutes. This is merely the broadest list of actions in the relevant time-period that Plaintiff's complaint suggests were discriminatory.

[7] The Court finds no evidence of a "continuing violation" to warrant an exception to the exhaustion requirement. As the Second Circuit has instructed:
> The continuing violation doctrine applies to cases involving specific discriminatory policies or mechanisms such as discriminatory seniority lists. However, multiple incidents of discrimination, even similar ones, that are not the result of a discriminatory policy or mechanism do not amount to a continuing violation. To bring a claim within the continuing violation exception, a plaintiff must at the very least allege that one act of discrimination in furtherance of the ongoing policy occurred within the limitations period."

Valtchev v. City of New York, 400 F. App'x 586, 588–89 (2d Cir. 2010) (summary order) (internal citations omitted).

charge, and is not required to at the pleadings stage. See DiPetto, 383 F. App'x at 104. However, as the Court grants Plaintiff thirty (30) days to amend her complaint, she may well wish to attach her original complaints to the NYS Department of Labor, and any EEOC charge as exhibits to her amended complaint. In the event Plaintiff fails to do so, Defendant may, if necessary, seek to raise any exhaustion arguments concerning the actions that occurred after March 31, 2014 in a motion for partial summary judgment.

## C. *Prima Facie* Case of Discrimination

Defendant argues that, even if Plaintiff had exhausted her administrative remedies, she has failed to allege a *prima facie* case of discrimination under Title VII, the ADA, or GINA. The Court agrees, but grants Plaintiff thirty (30) days to file an amended complaint that plausibly alleges any timely claims under Title VII or the ADA.

### 1. Title VII Discrimination Claim

Title VII prohibits employers from "discriminat[ing] against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a)(1). Claims of employment discrimination brought pursuant to Title VII are analyzed under the familiar burden-shifting approach set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802–03 (1973). "Under this framework, a plaintiff must first establish a *prima facie* case of discrimination." Ruiz v. County of Rockland, 609 F.3d 486, 491 (2d Cir. 2010) (citation omitted). This means Plaintiff must ultimately show that "(1) she is a member of a protected class; (2) she is qualified for her position; (3) she suffered an adverse employment action; and (4) the circumstances give rise to an inference of discrimination." Vega, 801 F.3d at 83.

However, to survive a motion to dismiss, Plaintiff need only "plausibly allege that (1) the

7

employer discriminated against [her] and (2) [her] race, color, religion, sex, or national origin was a motivating factor in the employment decision." Id. at 86. The facts alleged in the complaint must provide "at least minimal support for the proposition that the employer was motivated by discriminatory intent." Littlejohn v. City of New York, 795 F.3d 297, 311 (2d Cir. 2015). However, "the question is not whether a plaintiff is likely to prevail, but whether the well-pleaded factual allegations *plausibly* give rise to an inference of unlawful discrimination, *i.e.*, whether plaintiffs allege enough to 'nudge[] their claims across the line from conceivable to plausible.'" Vega, 801 F.3d at 87 (alteration in original) (quoting Twombly, 550 U.S. at 570). "Nevertheless, the elements of the *prima facie* case 'provide an outline of what is necessary to render a plaintiff's . . . claims for relief plausible.'" Bivens v. Inst. for Cmty. Living, Inc., No. 14-CV-7173, 2015 WL 1782290, at *7 (S.D.N.Y. Apr. 17, 2015) (quoting Kassman v. KPMG LLP, 925 F. Supp. 2d 453, 461 (S.D.N.Y. 2013)).

Taking an extremely liberal reading of Plaintiff's complaint, she seems to allege that she faced discrimination due to her race, gender, and/or national origin. Her complaint includes general statements about being a "Chinese woman engineer,"[8] followed by negative experiences. However, Plaintiff has failed to allege that any of the potentially timely actions were motivated by discriminatory intent. Her allegations in her opposition that, as "a Chinese American female employee[, she] did not have [the] right to use [her] leave credits," (ECF No. 19-4, at 9), is simply too conclusory to withstand a motion to dismiss.

Nor has Plaintiff alleged that similarly-situated employees outside her protected groups were permitted to use their leave or continue medical coverage while on Workers' Compensation

---

[8] Plaintiff uses this language in her Complaint. (See ECF No. 1-2, at 2.) In her opposition papers, she refers to herself as a "Chinese American female" in alleging that being prevented from using her leave credits was discriminatory. (See ECF No. 19-4, at 5.)

Leave.[9] "An employee is similarly situated to co-employees if they were (1) 'subject to the same performance evaluation and discipline standards' and (2) 'engaged in comparable conduct.' . . . In other words, the comparator must be similarly situated to the plaintiff 'in all material respects.'" Ruiz, 609 F.3d at 493–94 (internal citations omitted). Simply claiming that others were granted a right, without identifying the comparators or how they were similarly situated to her, does not satisfy the pleading requirements of Iqbal.

Finally, according to the Court's reading of Plaintiff's submissions, she only disputes her termination because she claims she should have been permitted to use her leave credits to prevent her absence from reaching one cumulative calendar year—not that the decision to terminate her was, itself, motivated by her race, gender, or national origin. Thus, if the denial of use of her leave credits was not motivated by discriminatory intent, her termination necessarily was not. However, for the avoidance of doubt, the Court finds that Plaintiff has not plausibly alleged that the decision to terminate her was motivated by discriminatory intent.

### 2. ADA Discrimination Claim

ADA claims are also analyzed under the McDonnell Douglas framework. To establish a *prima facie* case of disability discrimination under the ADA, a plaintiff must ultimately show that: "(1) [her] employer is subject to the ADA; (2) [s]he was disabled within the meaning of the ADA; (3) [s]he was otherwise qualified to perform the essential functions of [her] job, with or without reasonable accommodation; and (4) [s]he suffered adverse employment action because of [her]

---

[9] Notably, it appears from documents attached to Defendant's motion papers that Plaintiff's union contract and the NYS Civil Service Leave and Attendance Manual do not permit employees to use leave credits while on Workers' Compensation Leave. (ECF No. 19-5 at, 4, 19–24; see also ECF No. 19-4, at 68.) However, because Defendant has not explained how, on a motion to dismiss, the Court can consider the documents Defendant included with its motion, the Court declines to consider those documents. Additionally, Defendant did not even seek to introduce a copy of the relevant collective bargaining agreement. If the collective bargaining agreement does, in fact, preclude any covered employees from using leave credits while on Workers' Compensation Leave, it is difficult to see how Plaintiff could have any viable discrimination claims based on Defendant's refusal to permit her to use leave credits while on Workers' Compensation Leave.

disability."[10] McMillan v. City of New York, 711 F.3d 120, 125 (2d Cir. 2013). However, "[a]s with Title VII discrimination claims, while a plaintiff need not specifically plead each and every element of a *prima facie* case of discrimination to survive a motion to dismiss, the standard provides a framework for analyzing whether the plaintiff's claims for relief are plausible." Thomson v. Odyssey House, No. 14-CV-3857, 2015 WL 5561209, at *16 (E.D.N.Y. Sept. 21, 2015), aff'd, 652 F. App'x 44 (2d Cir. 2016).

Again, Plaintiff fails to sufficiently allege that other similarly situated employees outside her protected group were permitted to use their leave credits or continue medical coverage while on Workers' Compensation Leave. The bald statements in Plaintiff's opposition brief that, as a "work-related disability employee" she was not able to use her leave credits when she was sick at home "like other employees [who] are granted the same right when they [are] sick at home" are not sufficient to raise a plausible claim under the ADA. (See ECF No. 19-4, at 9.) These statements fail to identify any specific individual who was permitted to use their leave and does not allege that these hypothetical employees were actually on Workers' Compensation Leave. Moreover, to the extent that Plaintiff is simply alleging that Defendant treats employees on Workers' Compensation Leave differently from employees who are out sick because their illness or disability was not work-related, Plaintiff fails to allege a plausible discrimination claim under the ADA.

Plaintiff's complaint also fails to allege that she was otherwise qualified to perform her job with or without reasonable accommodation from March 27, 2014 through her date of termination

---

[10] Under the ADA, "[t]he term 'disability' means, with respect to an individual—(A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.SC. § 12102(1).

10

in December 2014.[11] Recently, in Smith v. Town of Ramapo, the Second Circuit made clear that an employee whose disability prevents her from performing the essential functions of her job cannot bring an ADA claim based on her inability to use or accrue leave credits while on disability leave. 745 F. App'x 424 (2d Cir. 2018) (summary order). The Second Circuit stated that "determination of whether a person is 'qualified' should be made at the time of the discriminatory employment action." Id. at 426. Here, Plaintiff's complaint does not allege that she was "qualified" to perform her job with or without reasonable accommodation at the time she alleges the discrimination occurred. Indeed, although she was informed that she could apply to return to work with a reasonable accommodation, (See ECF No. 1-2, at 5–7), Plaintiff makes no claim that she attempted to do so. Instead, the documentation reflects that she applied for disability retirement over two and a half years later.[12]

### III. GINA Discrimination Claim

GINA makes it unlawful for an employer "to fail or refuse to hire, or to discharge, any employee, or otherwise to discriminate against any employee . . . because of genetic information with respect to the employee." 42 U.S.C. § 2000ff-1(a)(1). "The Act defines 'genetic information' as (1) an employee's genetic tests; (2) the genetic tests of the employee's family members; or (3) the manifestation [of] a disease or disorder in the employee's family members." Grimes-Jenkins v. Consol. Edison Co. of New York, Inc., No. 16-CV-4897, 2017 WL 2258374, at *10 (S.D.N.Y. May 22, 2017), report and recommendation adopted, 2017 WL 2709747 (S.D.N.Y. June

---

[11] Plaintiff does state in her opposition that she was able to work with her disability in March 2012 when she was placed on Workers' Compensation Leave, and in general, that NYSDEC did not allow her to go back to work with her disability. (See ECF No. 19-4, at 9.) These allegations are not clearly within the relevant time-period.

[12] One exhibit to Plaintiff's complaint is a letter from NYSDEC referencing Plaintiff's request for "reasonable accommodation involving the keeping of [her] position on the payroll for 24 months and [her] using leave credits for the period of 3/22/12 through 8/21/12." (ECF No. 1-2, at 30.) This is not a valid reasonable accommodation request under the ADA.

11

22, 2017) (citing 42 U.S.C. § 2000ff(4)). To state a claim for genetic discrimination under GINA, Plaintiff must allege "(1) that she was an employee; (2) who was discharged or deprived of employment opportunities; (3) because of information from Plaintiff's genetic tests." Allen v. Verizon Wireless, No. 12-CV-482, 2013 WL 2467923, at *23 (D. Conn. June 6, 2013) (citation omitted).

Even reading Plaintiff's complaint as liberally as possible, she simply does not allege that anyone at NYSDEC had such information or that she was discriminated against because of such information. Accordingly, Plaintiff has failed to state a colorable discrimination claim under GINA and her claims are dismissed. See Grimes-Jenkins, 2017 WL 2258374, at *10 (dismissing GINA claim where plaintiff failed to allege that she was discriminated against because of genetic information).

D. **Leave to Amend**

A *pro se* plaintiff should ordinarily be given the opportunity "to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." Shomo v. City of New York, 579 F.3d 176, 183 (2d Cir. 2009). Though it appears doubtful that Plaintiff can plead any plausible claim, the Court is unwilling to dismiss Plaintiff's Title VII and ADA claims outright without permitting her an opportunity to amend her complaint.

However, "a district court may deny [a *pro se* plaintiff] leave to amend when amendment would be futile." Boddie v. New York State Div. of Parole, No. 08-CV-911, 2009 WL 1033786, at *5 (E.D.N.Y. Apr. 17, 2009) (citations omitted). Unlike the Title VII and ADA claims, the deficiencies in Plaintiff's GINA claims are substantive and there is nothing in the record suggesting that these claims could be cured with better pleading.

Accordingly, the Court grants Plaintiff leave to amend her complaint regarding her claims under Title VII and the ADA. Plaintiff may not allege any GINA discrimination claims in her amended complaint.[13]

### III. CONCLUSION

For the reasons stated above, Defendant's motion to dismiss is granted and Plaintiff's complaint is dismissed in its entirety. However, Plaintiff is granted leave to file an amended complaint in compliance with Federal Rule of Civil Procedure 8 regarding any Title VII and ADA claims. The amended complaint shall be clearly labeled "Amended Complaint," shall bear the same docket number as this Order, 16-CV-2180, and must be filed within thirty (30) days of this Order. Because an amended complaint completely replaces the original, Plaintiff shall include all claims she seeks to pursue in this case. Plaintiff is cautioned that a failure to timely file an amended complaint in accordance with this Order will lead to the dismissal of this action with prejudice.

Although Plaintiff paid the filing fee to commence this action, the Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that, should she seek *in forma pauperis* status for the purpose of an appeal, any appeal from this order would not be taken in good faith and therefore *in forma pauperis* status is denied. See Coppedge v. United States, 369 U.S. 438, 444–45 (1962). The Clerk of Court is directed to mail a copy of this order to the *pro se* Plaintiff.

**SO ORDERED.**
Dated: March 20, 2019
Central Islip, New York

/s/ (JMA)
JOAN M. AZRACK
UNITED STATES DISTRICT JUDGE

---

[13] As Plaintiff has an opportunity to amend her complaint, the Court declines to address the validity of any potential state-law claims at this juncture. If Plaintiff fails to file an amended complaint, or files an amended complaint that does not raise any plausible federal claims, the Court will, at that time, decline to exercise supplemental jurisdiction over any state-law claims.